# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAZEL MCMILLON; GENE STRICKLAND; TRUDY SABALBORO; KATHERINE VAIOLA; and LEE SOMMERS, each individually and on behalf of a class of present and future residents of Kuhio Park Terrace and Kuhio Hones who have disabilities affected by architectural barriers and hazardous conditions,<br><br>                Plaintiffs,<br><br>      vs.<br><br>STATE OF HAWAII; HAWAII PUBLIC HOUSING AUTHORITY; REALTY LAUA LLC, formerly known as R & L Property Management LLC, a Hawaii limited liability company,<br><br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br>CIVIL NO. 08-00578 JMS/LEK<br><br>ORDER GRANTING PLAINTIFFS HAZEL MCMILLON, GENE STRICKLAND, TRUDY SABALBORO, KATHERINE VAIOLA, AND LEE SOMMERS' MOTION FOR CLASS CERTIFICATION |

## <u>ORDER GRANTING PLAINTIFFS HAZEL MCMILLON, GENE STRICKLAND, TRUDY SABALBORO, KATHERINE VAIOLA, and LEE SOMMERS' MOTION FOR CLASS CERTIFICATION</u>

## I.  INTRODUCTION

On December 18, 2008, Plaintiffs Hazel McMillon, Gene Strickland, Trudy Sabalboro, Katherine Vaiola and Lee Sommers (collectively, "Plaintiffs") filed a Complaint against the State of Hawaii and the Hawaii Public Housing Authority (collectively "HPHA") and Realty Laua LLC ("Realty Laua") (collectively, "Defendants") alleging violations by HPHA of Title II of the Americans with Disabilities Act ("Title II"), Section 504 of the Rehabilitation Act ("Section 504"), and the Fair Housing Act Amendments ("the FHAA"), and violations by Realty Laua of Title V of the ADA and the FHAA.  Plaintiffs' claims are based on, among other things, Defendants' alleged failures to provide safe and accessible housing, prepare and implement evacuation plans, remedy hazardous environmental conditions, maintain safe and accessible elevators, and implement an effective system for receiving and responding to requests for accommodations at Kuhio Park Terrace ("KPT") and Kuhio Homes, where Plaintiffs reside.

Currently before the court is Plaintiffs' Motion for Class Certification. Based on the following, the court GRANTS Plaintiffs' Motion.

///

///

///

## II.  **BACKGROUND**

### A.    Factual Background

KPT and Kuhio Homes are public housing projects that receive federal financial assistance and are owned, operated, and controlled by HPHA and managed by Realty Laua.  Compl. ¶ 2.  KPT consists of two sixteen-story towers containing 614 units, while Kuhio Homes is a low-rise complex with 134 units. *Id.* ¶ 23.  As alleged in the Complaint, Plaintiffs are low-income persons with disabilities who live in KPT and Kuhio Homes and bring this action on behalf of themselves and others similarly situated who have been denied access to the facilities, programs, services, and/or activities of Defendants and/or have been discriminated against because of architectural barriers and/or hazardous conditions. *Id.* ¶ 15.  Plaintiffs suffer from a wide array of health problems including mobility disabilities, breathing impairments, arthritis, diabetes, obesity, asthma, multiple sclerosis, and severe heart problems.  *Id*. ¶¶ 7-11.

### 1.    *Conditions at KPT and Kuhio Homes*

The Complaint alleges that KPT and Kuhio Homes are characterized by architectural barriers, leaking and bursting plumbing, an almost total lack of hot water, rat and roach infestations, nonfunctioning and dangerous elevators, overflowing and burning trash piles, toxic air, and a lack of basic fire safety

3

equipment.  *Id.* ¶ 29.

      a.    *Architectural barriers*

The Complaint alleges that architectural barriers pervade Defendants'
facilities, making individuals who use wheelchairs unable to travel through exterior
or interior doors, use bathroom and kitchen areas, access laundry rooms, and
operate environmental controls.  *Id.* ¶ 45; *see also* Mastin Decl. ¶¶ 110-20;
Sabalboro Decl. ¶ 8; Vaiola Decl. ¶¶ 6-8.  Plaintiffs' access expert, Jeff Mastin,
describes that pathways are non-accessible due to raised edges, cross slopes,
running slopes, and drop offs.  Mastin Decl. ¶¶ 32-77.  There is also inadequate
accessible parking at Tower B of KPT, and no accessible parking at Tower A, the
management office, or the health facility.  *Id.* ¶ 78.  Mastin describes accessibility
repairs that can be made to the facilities, and notes that some of these repairs are
"simple and inexpensive."  *Id.* ¶ 42; *see also*, *e.g.*, *id.* ¶¶ 43, 49, 54, 57, 62, 103.

Disabled tenants have been told that there are no accessible units
available and that it may take years on a waiting list before being moved to an
accessible unit.  *See* Tuia Decl. ¶ 13; *see also* Sommers Decl. ¶¶ 13, 15.  In the
meantime, however, disabled tenants must make do with their current apartments.
Plaintiff Katherine Vaiola uses a wheelchair due to a diabetes-related leg
amputation, yet her apartment consists of two stories with the bathroom and

bedrooms upstairs.  Vaiola Decl. ¶¶ 3-5.  Vaiola cannot access these upstairs rooms and therefore bathes herself in the kitchen and uses a portable toilet in her living room.  *Id.* ¶ 6.

        b.    *Environmental conditions and hot water*

The Complaint alleges that the air at KPT is filled with hazardous particulates such as soot dust from trash fires, roach dust, rat allergens, and toxins from faulty plumbing and wastewater, which exacerbate, trigger, and create respiratory distress.  Compl. ¶ 40; *see also* Scofield Decl. ¶¶ 10-15 (opining that the conditions at KPT and Kuhio Homes are hazardous and can aggravate respiratory illnesses and bacterial infections); McMillon Decl. ¶ 16 (describing roach problem); Sommers Decl. ¶ 11 (describing sewage backups).  Plaintiffs have experienced breathing problems, bronchitis, and worsened asthma due to these conditions.  *See* McMillon Decl. ¶ 10; Sabalboro Decl. ¶ 7; Silva Decl. ¶ 25; Strickland Decl. ¶ 15.

The Complaint also alleges that during most hours of most days, there is no hot water at KPT and bathing in the cold water triggers and/or worsens individuals' medical conditions and opens the door to opportunistic infections. Compl. ¶ 44; McMillon Decl. ¶ 9 (stating that the cold water worsens her arthritis). Residents suggest, however, that access to hot water has improved since Plaintiffs

filed the Complaint.  Realty Laua Exs. A at 7, C at 17, D at 16.

   *c.*  *Elevators at KPT*

   The Complaint alleges that Defendants have failed to maintain the elevators at KPT.  Compl. ¶ 34.  Each tower at KPT has two tenant elevators and one freight elevator.  When working, the elevators are often unable to stop at every floor or be called from every floor, resulting in residents waiting for up to an hour for elevator service.  *Id*.; Sommers Decl. ¶ 8; McMillon Decl. ¶ 4; Strickland Decl. ¶ 5.  Frequently, the tenant elevators are either not working properly or completely out of service, resulting in KPT staff operating the freight elevator for tenant use.  McMillon Decl. ¶ 5.  The freight elevators pose risks to certain disabled individuals because access is obstructed by vertical edges, gaps, and short steep ramps across the expansion joint.  Mastin Decl. ¶ 96.

   There are also times when all the elevators are broken, which either traps mobility-impaired individuals or forces those that can walk to take stairs that are poorly lit, wet, and smell of urine.  Sommers Decl. ¶ 9; McMillon Decl. ¶¶ 7-8; McMillon Exs. A-B; Sabalboro Decl. ¶ 4; Silva Decl. ¶ 23; Strickland Decl. ¶¶ 6-7; Tuia Decl. ¶ 5.  Some individuals have fallen on the stairs and suffered injuries, requiring medical attention.  McMillon Decl. ¶¶ 7-8; Strickland Decl. ¶¶ 7-8; Tuia Decl. ¶ 5.  Further, given the frequency that the elevators break down, mobility-

impaired individuals are fearful of leaving their apartments because of the difficulty they may face when trying to return.  Silva Decl. ¶ 23.

> d.    *Fire safety*

The Complaint alleges that KPT has frequent fires in the trash and other areas.  Compl. ¶ 38.  In 2007 alone, the Honolulu Fire Department responded to fires at KPT at least 60 times, many of which were caused by lack of maintenance at KPT.  Muniz Decl. ¶¶ 11(a), 12.  Despite these numerous fires, the facilities lack functioning, system-wide fire alarms, hoses and fire extinguishers, and many housing units lack functioning smoke detectors.  Muniz Decl. ¶ 14; McMillon Decl. ¶ 11; Sabalboro Decl. ¶ 5.  Further, Plaintiffs are not informed of KPT's evacuation procedures and policies regarding evacuation of disabled tenants, and have never participated in any fire drills.  *See, e.g.*, McMillon Decl. ¶ 11; Sabalboro Decl. ¶ 6; Silva Decl. ¶ 26; Strickland Decl. ¶ 15; Tuia Decl. ¶ 17.

Defendants have apparently sought and received fire code exemptions on the condition that they comply with other requirements, yet Defendants have not complied with those requirements.  Muniz Decl. ¶¶ 29-36.

///

///

///

7

## 2. *Accommodations Process*

HPHA has set procedures and forms for any eligible, disabled resident to request reasonable accommodation, and grieve any denial of a requested accommodation. *See* Creps Decl. ¶ 6; Creps Ex. E.  Before placing residents in public housing, HPHA tracks how many people requesting housing have identified themselves as disabled; HPHA statistics currently indicate that 1,774 waitlisted families -- making up twenty percent of the waitlist -- are "Families with Disabilities."  Kim Ex. C at 8.  When selected for public housing, new tenants receive HPHA's Notice of Right of Reasonable Accommodation, which notifies tenants that if they have a disability and need a change regarding their living conditions, they may request a reasonable accommodation.  Creps Ex. E.  As of July 22, 2009, forty-seven current residents of KPT and Kuhio Homes had identified themselves to Realty Laua as mobility disabled by using these procedures.  Faleafine Decl. ¶ 6.  Of those who identified themselves to Realty Laua as mobility disabled, ten of those residents has requested a transfer or an access ramp to accommodate their disability.  *Id.* ¶ 6-10.

Plaintiff Lee Sommers filled out an accommodation request form when she first moved to KPT, listing that a "lower floor, freight elevator [is] regular 'down,' and an air conditioner" were needed.  Sommers Decl. ¶ 12;

Sommers Ex. B.  Sommers was placed on the second floor, and never received a response regarding the request for an air conditioner.  Sommers Decl. ¶ 12. Sommers later requested a unit on the ground floor, using HPHA's accommodation request form, *id.* ¶ 13; Sommers Ex. D, but was told no units were available. Sommers Decl. ¶ 13.

Without using the official procedures and forms, Plaintiffs other than Sommers have requested reasonable modifications and/or complained about the conditions at KPT and Kuhio Homes.  *See* McMillon Decl. ¶¶ 9, 12, 19; Sabalboro Decl. ¶¶ 4, 12; Silva Decl. ¶¶ 10-13; Strickland Decl. ¶ 10; Tuia Decl. ¶ 6; Vaiola Decl. ¶ 10.  Dr. Ritabelle Fernandes, a physician who works with KPT and Kuhio Homes residents, has written approximately 400 letters for KPT and Kuhio Homes residents in the past eight years requesting reasonable housing accommodations. Fernandes Decl. ¶ 6.  In response, Defendants have taken little or no action, told individuals that they had lost the paperwork, and rarely provide tenants with the forms described above.  *Id.* ¶ 11; McMillon Decl. ¶¶ 13, 19; Sabalboro Decl. ¶ 12; Silva Decl. ¶¶ 14, 21; Strickland Decl. ¶¶ 16-17; Vaiola Decl. ¶¶ 12-14; Sommers Decl. ¶¶ 13-15.

///

///

**B.      Procedural Background**

Plaintiffs' December 18, 2008 Complaint alleges claims against HPHA pursuant to Title II, Section 504, and the FHAA, and against Realty Laua pursuant to Title V of the ADA and the FHAA.

On June 19, 2009, the court issued its Order Granting in Part and Denying in Part HPHA's Motion to Dismiss and/or for Summary Judgment ("June 19 Order").  Doc. No. 87 at 25.  The court dismissed Plaintiffs' FHAA claim against HPHA, but denied HPHA's motion in all other respects.  *Id*.  As a result, Plaintiffs' claims pursuant to Title II and Section 504 against HPHA, and all of Plaintiffs' claims against Realty Laua, remain.

On June 3, 2009, Plaintiffs filed their Motion for Class Certification. On July 24, 2009, HPHA and Realty Laua filed separate Oppositions, and Plaintiffs filed a Reply on July 31, 2009.  A hearing was held on October 13, 2009.

### III.  <u>STANDARD OF REVIEW</u>

Class actions are governed by Federal Rule of Civil Procedure 23. The court must perform a "rigorous analysis" as to whether the requirements for class certification set forth in Rule 23 have been met.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  As the party seeking certification, Plaintiffs bear the burden of setting forth facts sufficient to satisfy the requirements of Rule

23. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).

When considering a motion for class certification, the court accepts the allegations as pled in Plaintiffs' Complaint as true, *see Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975), but does not consider whether Plaintiffs have stated a cause of action or whether they are likely to prevail on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The court may consider, however, its previous substantive rulings in the context of the history of the case, *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000), as well as evidence that relates to the merits if such evidence also goes to Rule 23's requirements. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). If the court finds that Plaintiffs have met their burden of proof as to the requirements of Rule 23, the court may, in its broad discretion, certify the class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

## IV. <u>DISCUSSION</u>

Plaintiffs propose to represent a class consisting of:

> All present and future residents of KPT and Kuhio Homes who are eligible for public housing, who have mobility impairments or other disabling medical conditions that constitute "disabilities" or "handicaps" under federal disability nondiscrimination laws, and who are being denied access to the facilities, programs, services, and/or activities of the Defendants, and or/discriminated against, because of the architectural

> barriers and/or hazardous conditions described [in the Complaint].

Pls.' Mot. 4.

Pursuant to Rule 23(a), Plaintiffs' proposed class definition must meet the prerequisites of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Additionally, Plaintiffs must satisfy at least one of the requirements of Rule 23(b).  Plaintiffs contend that class certification is warranted because the proposed class satisfies the prerequisites in Rule 23(a) and the requirements of Rule 23(b)(2).  The court agrees and finds that class certification is appropriate.

//

//

//

//

//

//

//

//

//

12

A.      **Federal Rule of Civil Procedure 23(a)**[1]

1.      *Numerosity*

Numerosity is satisfied when the members of a class are "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Courts need not determine the exact size of a class in order to find numerosity satisfied. *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008). Generally, a class satisfies numerosity if it is likely to exceed forty members. *Amone v. Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005) (citing 1 William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3.6 (4th ed. 2002)); *see also Jordan v. L. A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated and remanded on other grounds*, 459 U.S. 810 (1982). The court's numerosity determination requires, however, "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co.*, 446 U.S. at 330. For

_____

[1] As an initial matter, Realty Laua contends that the court need not reach the Rule 23 analysis and should dismiss Plaintiffs' Motion because the class definition is vague and overbroad. Realty Laua Opp'n 12. Realty Laua's vagueness argument -- focused solely on the trash chute fires in KPT -- is wholly unpersuasive. Given the extensive number of allegations of discriminatory treatment in the Complaint, class certification does not hinge on evidence concerning the trash chute fires alone. Further, Realty Laua's trash chute argument challenges the merits of Plaintiffs' claims and, as a result, is not properly considered at the class certification stage. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (finding that a motion for class certification is not the appropriate point at which to determine if Plaintiffs have stated a claim or the merits of that claim). Realty Laua's other arguments on vagueness and overbreadth relate to commonality and typicality and the court therefore addresses these arguments below.

example, *Amone* found that a proposed class of Hawaii public housing residents satisfied numerosity in part because the residents, by virtue of living in public housing, had limited financial means and limited awareness of court proceedings. *Amone*, 226 F.R.D. at 684.  *Amone* held that these factors, and the fact that the plaintiffs had claims potentially too small to make individual litigation feasible, rendered joinder impracticable and weighed in favor of numerosity.  *Id*.

In this case, the proposed class is likely to be sizeable, and well in excess of the forty-person threshold used by other courts to determine numerosity. As of July 22, 2009, forty-seven current residents of KPT and Kuhio Homes had identified themselves to Realty Laua as having a mobility disability.  Faleafine Decl. ¶ 6.  In addition to these forty-seven residents, additional residents in KPT and Kuhio Homes are disabled, but have not officially informed Realty Laua of their disabilities.  *See*, *e.g.*, McMillon Decl. ¶¶ 9, 12; Sabalboro Decl. ¶¶ 4, 12; Silva Decl. ¶¶ 10-13; Strickland Decl. ¶ 10; Tuia Decl. ¶ 6; Vaiola Decl. ¶ 10. Realty Laua's count of forty-seven disabled residents also does not include residents with non-mobility disabilities.  Faleafine Decl. ¶ 6.  As for future residents, HPHA statistics indicate that twenty percent of the families on the waitlist for public housing are "Families with Disabilities."  Kim Ex. C at 8.  Some number of these 1,774 waitlisted "Families with Disabilities" are likely future

14

residents of KPT and Kuhio Homes.  *Id.*

Plaintiffs must still determine, of course, which disabled residents and future residents satisfy the entire class definition, which requires that disabled residents have been denied access and/or discriminated against because of architectural barriers or hazardous conditions.  The high number of present and future residents with disabilities suggests, however, that a great number of people will be eligible to join the class.  The fact that Dr. Ritabelle Fernandes has written approximately 400 letters for disabled residents of KPT and Kuhio Homes requesting accommodations, Fernandes Decl. at ¶ 6, provides further support for the court's conclusion that a sufficient number of the disabled residents will satisfy the class definition.  *See Gen. Tel. Co.*, 446 U.S. at 330 (directing courts to examine the specific facts of each case when determining numerosity).

In addition to the size of the proposed class, other factors particular to this population of Plaintiffs weigh in favor of finding Rule 23(a)(1) satisfied.  As residents of public housing, Plaintiffs and the proposed class members have limited financial means to bring individual claims and limited awareness of how to initiate or participate in court proceedings.  *See Amone*, 226 F.R.D. at 684.  Individual damages may also be too small to make individual litigation feasible.  *Id.*; *see also* Mastin Decl. ¶ 42 (describing some accessibility modifications as "simple and

inexpensive").  These factors suggest individual suits would be impracticable and support the court's finding of numerosity.

In opposition, Defendants contend that numerosity is not satisfied because the class consists of just ten people: those residents with identified mobility disabilities who are currently requesting an accommodation -- that is, a transfer or access ramp.  HPHA Opp'n 17; Realty Laua Opp'n 17; *see also* Faleafine Decl. ¶¶ 6-10.  Defendants' calculation is unrealistically narrow.  The June 19 Order specifically held that Plaintiffs need not "allege that Defendant's knew of Plaintiffs' disabilities" in order to pursue their claims.  Doc. No. 87 at 22. Simply put, Plaintiffs' claims are not contingent on their use of Defendants' formal accommodation process.

Even putting aside Defendants' reliance on whether residents officially identified themselves as disabled, Defendants' numerosity calculation is flawed because of its emphasis on requests for transfers or access ramps.  *See* Faleafine Decl. ¶¶ 6-10.  A disabled resident need not have requested a transfer or an access ramp in order to have been denied access and/or discriminated against under Plaintiffs' class definition.  For example, the "hazardous and non-accessible" public walkways identified by Plaintiffs' access expert, Mastin Decl. ¶ 43, may deny disabled residents access to the facilities, programs, services and/or

16

activities of Defendants, but never prompt a request to transfer to a different unit or for an access ramp.

Finally, Defendants' calculation is unpersuasive because it inexplicably fails to account for residents with non-mobility disabilities and future disabled residents. The proposed class definition includes those with breathing impairments and other forms of disabilities so long as those residents have been denied access and/or discriminated against because of the access barriers or hazardous conditions at KPT and Kuhio Homes. The definition further encompasses not only current residents with these disabilities, but also future residents similarly discriminated against or denied access. The court's numerosity determination must account for all of these potential plaintiffs, and not merely the ten people identified by Defendants.

In further opposition, Defendants argue that Plaintiffs cannot establish numerosity because Plaintiffs' counsel has presently identified only five class members. Defendants argue that the number of named plaintiffs "speaks volumes" about the size of the class. Realty Laua Opp'n 18-19; *see also* HPHA Opp'n 16. Defendants cite no support for this position, and the court finds it unpersuasive given the number of disability accommodation requests submitted by KPT and Kuhio Homes residents and the high number of disabled people on the waitlist for

17

public housing in Hawaii.  Faleafine Decl. ¶ 6; Fernandes Decl. ¶ 6; Kim Ex. C at 8.

In sum, the court finds that numerosity is satisfied.

### 2.      *Commonality*

Commonality requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is construed permissively. *Rodriguez v. Hayes*, 578 F.3d 1032, 1048 (9th Cir. 2009) (citation omitted).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[O]ne significant issue common to the class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).  Class actions seeking declaratory or injunctive relief "by their very nature often present common questions satisfying Rule 23(a)(2)."  *Amone*, 226 F.R.D. at 684 (citing 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1763 (1986)).

In class actions challenging discriminatory practices, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citations omitted).  Plaintiffs with different types of disabilities satisfy

the commonality requirement despite their differences when all of the plaintiffs

"suffer similar harm from [a defendant's] failure to accommodate their

disabilities."  *Id*.  In *Davis*, plaintiffs challenging the accessibility of California's

parole hearings satisfied commonality despite the fact that plaintiffs had widely

differing forms of disabilities, including mobility impairments, hearing disabilities,

visual disabilities, learning disabilities, and mental retardation.  *Id*. at 854.

      In this case, Plaintiffs assert common legal theories by arguing that

Defendants' practices, policies, and omissions in KPT and Kuhio Homes violate

the ADA, Section 504 and/or the FHAA.  Specifically, Plaintiffs allege a system-

wide practice or policy of discrimination, which allegedly results in discriminatory

conditions and access barriers in KPT and Kuhio Homes, including architectural

barriers, leaking and bursting plumbing, an almost total lack of hot water, rat and

roach infestations, nonfunctioning and dangerous elevators, overflowing and

burning trash piles, toxic air, and a lack of basic fire safety equipment.  Compl.

¶ 29.  By alleging this type of discriminatory treatment, Plaintiffs are

"challeng[ing] a system-wide practice or policy that affects all of the putative class

members."  *Armstrong*, 275 F.3d at 868 (citations omitted).  These allegations of

shared legal issues satisfy Plaintiff's permissive burden to demonstrate

commonality.  *Rodriguez*, 578 F.3d at 1048.  The fact that Plaintiffs seek

declaratory relief to bring KPT and Kuhio Homes into compliance with federal

nondiscrimination laws, Compl. ¶¶ 39-40, further shows that the proposed class

presents common legal questions to the court.  *See Amone*, 226 F.R.D. at 684.[2]

        In opposition, Defendants raise a number of alleged dissimilarities

among Plaintiffs' claims, but none of them is sufficient to dispute commonality.

First, Defendants argue that accommodation inquiries are unsuited for a class

action because these inquiries are highly individualized and fact specific.  HPHA

Opp'n 5; Realty Laua Opp'n 20.  HPHA argues that as a result of these fact-

specific inquiries, the court will need to conduct "mini-trials" as to each access

barrier to determine liability.  HPHA Opp'n 11.  As explained above, however,

differences in Plaintiffs' disabilities do not prevent commonality because

Plaintiffs' alleged harms are similar.  Accommodations inquiries are not, as

Defendants assert, unsuited to class actions.  *See Davis*, 275 F.3d at 868 (finding

---

[2] Because Plaintiffs' legal theories are common, the factual predicates underlying their claims need not be.  As a result, neither the differences in Plaintiffs' disabilities nor the differences in the structures of KPT and Kuhio Homes prevent commonalty.  The range of Plaintiffs' disabilities does not impair commonality because Plaintiffs allege that they suffer from similar harms -- including denial of access and discriminatory treatment -- as a result of Defendants' practices and policies.  *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Further, the structural differences between the two housing projects is inapposite to commonality because Plaintiffs allege that in both buildings Defendants maintain discriminatory conditions and access barriers and fail to reasonably accommodate Plaintiffs' needs.  These legal claims span across both KPT and Kuhio Homes and thus are common to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "The existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality].").

that plaintiffs with widely different disabilities who were seeking accommodations in California's parole hearings satisfied commonality because of their shared harms); *see also Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) (finding an argument concerning a need for "mini-trials" in an ADA case unpersuasive because "[t]he essence of defendants' argument -- that in order to prove the existence of the forest the plaintiffs must individually prove the existence of each tree -- is anathema to the very notion of a class action").

Second, HPHA argues that commonality is not satisfied because a blanket injunction to fix KPT and Kuhio Homes is impracticable.  HPHA Opp'n 5-6.  HPHA contends that the age and size of the housing projects constrains Defendants' abilities to accommodate Plaintiffs and that extensive repairs would impose an undue financial hardship.  HPHA misunderstands the nature of the commonality inquiry.  The court cannot determine what relief, if any, is appropriate without reaching the merits of Plaintiffs' claims, which the court cannot do when certifying a class.  *See Eisen*, 417 U.S. at 178 (finding that a motion for class certification is not the appropriate point at which to resolve the merits of a plaintiff's claim).  As a result, Defendants' concern about the possible scope of an injunction if Plaintiffs are successful on the merits is premature and,

21

moreover, immaterial to commonality.

Next, Realty Laua argues that commonality is not present because Plaintiffs are not specific about what "systemic policy" they are challenging. Realty Laua Opp'n 19.  In fact, however, Plaintiffs are quite clear in their challenge.  Plaintiffs allege that Defendants violate federal disability discrimination statutes by maintaining discriminatory conditions and access barriers in KPT and Kuhio Homes, including architectural barriers, leaking and bursting plumbing, an almost total lack of hot water, rat and roach infestations, nonfunctioning and dangerous elevators, overflowing and burning trash piles, toxic air, and a lack of basic fire safety equipment.  Compl. ¶ 29.  These allegations are specific enough, and more to the point, common enough, to satisfy Rule 23(a)(2).

Finally, Realty Laua argues that Plaintiffs cannot challenge the reasonable accommodation procedures maintained by Defendants because the majority of named Plaintiffs did not use these procedures.  Realty Laua Opp'n 20. To the contrary, the June 19 Order found that Plaintiffs could proceed to challenge these procedures whether or not Plaintiffs followed them.  Doc. No. 87 at 24-26.

In sum, the court finds that commonality is present.

### 3.     *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the

representative parties be typical of the claims or defenses of the class."  Fed. R.

Civ. P. 23(a)(3).  "Where the challenged conduct is a policy or practice that affects

all class members," the court's typicality inquiry must "compar[e] the injury

asserted in the claims raised by the named plaintiffs with those of the rest of the

class."  *Armstrong*, 275 F.3d at 868-69.  "[U]nder the rule's permissive standards,

representative claims are 'typical' if they are reasonably coextensive with those of

absent class members; they need not be substantially identical."  *Dukes*, 509 F.3d

at 1184 (quoting *Hanlon*, 150 F.3d at 1020).  The typicality and commonality

inquiries tend to merge.  *Gen. Tel. Co.*, 457 U.S. at 157 n.13 (1982).

Plaintiffs allege that they -- and the class they seek to represent -- have

been denied access and discriminated against as a result of their disabilities.  Pls.'

Mot. 27.  Upon comparing the alleged injuries, the court finds that Plaintiffs and

the class they seek to represent suffer from similar allegedly discriminatory

conditions and access barriers, including architectural barriers, leaking and

bursting plumbing, an almost total lack of hot water, rat and roach infestations,

nonfunctioning and dangerous elevators, overflowing and burning trash piles, toxic

air, and a lack of basic fire safety equipment.  By virtue of living in KPT and

Kuhio Homes, both named Plaintiffs and the class they seek to represent face the

same architectural barriers, inaccessible facilities, and environmental hazards.

Compl. ¶ 45; *see* Mastin Decl. ¶¶ 110-20; Sabalboro Decl. ¶ 8; Vaiola Decl. ¶¶ 6-8; *see also Armstrong*, 275 F.3d at 869 (finding typicality because "[t]he plaintiffs all suffer a refusal or failure to afford them accommodations as required by statute, and are objects of discriminatory treatment on account of their disabilities").  Even if Plaintiffs' allegations of shared harms are not identical with those of the class because of differences in their disabilities or residences, the harms of named Plaintiffs are reasonably coextensive with those alleged on behalf of the class and thus satisfy the permissive standard of Rule 23(a)(3).  *See Dukes*, 509 F.3d at 1184.

In opposition, Realty Laua contends that Plaintiffs' claims are not typical of the class because named Plaintiffs do not have all of the disabilities that potential class members may have.[3]  Realty Laua Opp'n 13.  Plaintiffs have primarily mobility disabilities, breathing impairments and handicaps that are exacerbated by a lack of hot water, Compl. ¶¶ 29, 40, but they may not have every disability or handicap covered by the class definition.  An exact representation of every possible disability is not required, however, where the class definition is restricted to those who are not only disabled, but also discriminated against and/or

---

[3]  In addition, Defendants oppose typicality by relying on principally the same arguments that they used to dispute commonality.  Given the merged nature of the commonality and typicality inquiries, *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982), the court relies on its reasoning discussed above to find Defendants' typicality arguments likewise unpersuasive here.

denied access as a result of their disabilities.  Plaintiffs' experiences with

discrimination and denial of access in KPT and Kuhio Homes -- not their particular

disabilities -- are what must be typical of the class.  The court finds that the access

barriers named Plaintiffs face as a result of their wide array of disabilities are

reasonably coextensive with those faced by the proposed class.  Thus, as explained

above, the exact disabilities suffered by Plaintiffs need not be identical to those of

the class for their claims to be typical of the class' claims.  *See Dukes*, 509 F.3d at

1184 (quoting *Hanlon*, 150 F.3d at 1020).

Finally, HPHA contends that typicality is not satisfied because "none

of the Plaintiffs have [sic] been denied 'access,'" that moving with "some effort"

does not prove the existence of a barrier, and that elevator wait time is an

"inconvenience" not an access barrier.  HPHA Opp'n 14.  These arguments go to

the merits of Plaintiffs' claims, not typicality, and are irrelevant at the class

certification stage.[4]  *See Eisen*, 417 U.S. at 177-78 (finding that a motion for class

certification is not the appropriate point at which to resolve the merits of a

plaintiff's claim).

Accordingly, the court finds that Plaintiffs have demonstrated

---

[4]  Indeed, by disputing Plaintiffs' alleged harms collectively, HPHA's arguments
highlight the similarities of Plaintiffs' harms, which supports a finding of typicality.

typicality.

### 4.    *Adequacy of Representation*

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order to satisfy the adequacy requirement, class representatives "must appear able to prosecute the action vigorously through qualified counsel . . . [and] must not have antagonistic or conflicting interests with the unnamed members of the class."  *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiffs are represented by qualified counsel and appear able to prosecute this action without conflicts.  Defendants do not dispute adequacy.  As a result, the court finds the requirement of Rule 23(a)(4) satisfied.

## B.    Federal Rule of Civil Procedure 23(b)(2)

Plaintiffs seek to certify the class under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  To certify a class under Rule 23(b)(2), a court must examine a plaintiff's intent in bringing suit and determine that a request for injunctive or declaratory relief predominates the claim.  *Molski v. Gleich*, 318 F.3d 937, 950 n.15 (9th Cir. 2003).

As a result, a plaintiff's request for damages weighs against granting certification under Rule 23(b)(2), but does not preclude it.  *Id*.

Accordingly, this case should be certified under Rule 23(b)(2) so long as Plaintiffs are seeking predominately declaratory or injunctive relief.  Plaintiffs allege that Defendants maintain a centralized policy of non-compliance with federal nondiscrimination laws.  Specifically, Plaintiffs allege that Defendants refuse to provide accessible housing and reasonable accommodations as required by Title II, Section 504, and, as to Realty Laua, the FHAA.  To remedy these harms, Plaintiffs seek (1) a declaratory judgment stating that Defendants have violated federal nondiscrimination laws; (2) injunctive relief as necessary to achieve compliance with Title II, Section 504 and the FHAA; (3) compensatory damages; and (4) fees and costs.  Compl. ¶¶ 39-40.

The scope and magnitude of the hazardous conditions alleged by Plaintiffs persuade the court that Plaintiffs' prayer for declaratory and injunctive relief predominates the claim.  *See Dukes*, 509 F.3d at 1187 ("[T]he principal category of cases contemplated by the advisory committee as being certifiable under Rule 23(b)(2) [are] 'actions in the civil-rights field where a party is charged with discriminating unlawfully against a class.'" (citing Fed. R. Civ. Proc. 23(b)(2), Advisory Committee Notes, 1966 Amendments)).  Plaintiffs primarily

seek to compel Defendants to comply with the statutes and regulations described above in order to remedy architectural barriers, leaking and bursting plumbing, an almost total lack of hot water, rat and roach infestations, nonfunctioning and dangerous elevators, overflowing and burning trash piles, toxic air, and a lack of basic fire safety equipment.  The court therefore finds that Rule 23(b)(2) certification is appropriate.

In opposition, Defendants argue that Rule 23(b)(2) includes a "need requirement" that precludes certification because a class action is not necessary in this case to achieve declaratory or injunctive relief.[5]  HPHA Opp'n 17-20; Realty Laua Opp'n 22-23.  Defendants contend -- in contradiction of their arguments against commonality -- that granting injunctive relief to Plaintiffs individually will remedy the conditions about which all proposed class members complain.

The court rejects this argument.  There is no needs requirement for class certification in the Ninth Circuit and the cases Defendants cite do not support their contention that the Ninth Circuit applies a needs test.  *See* Realty Laua Opp'n 19 (citing *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) (discussing neither Rule 23(b)(2) nor a needs requirement); *Hornreich v. Plant Indus., Inc.*,

---

[5]  HPHA also briefly opposes Rule 23(b)(2) certification on grounds it already raised in opposition to numerosity and commonality.  HPHA Opp'n 17.  The court finds those arguments similarly unpersuasive here for the same reasons explained above.

535 F.2d 550, 552 (9th Cir. 1976) (discussing neither Rule 23(b)(2) nor a needs requirement); *James v. Ball*, 613 F.2d 180 (9th Cir. 1979), *rev'd on other grounds*, 451 U.S. 335 (1981) (affirming a denial of class certification and noting that "[w]e are not unmindful of the benefits of a class action... but we conclude that in this case they would not be significant." (citation omitted))).  This court agrees with the recent district court cases in this circuit that have repeatedly refuted the existence of a needs requirement as a component of Rule 23(b)(2).  *See*, *e.g.*, *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 123 (C.D. Cal. 2008) ("[T]his Court refuses to deny certification simply because class adjudication is not strictly necessary in this case." (citation omitted)); *Ollier v. Sweetwater Union High Sch. Dist.*, 251 F.R.D. 564, 566 (S.D. Cal. 2008) ("There is no requirement in the Ninth Circuit that the 'need' for an injunction be considered in certifying a class."); *Californians for Disability Rights, Inc.*, 249 F.R.D. at 349 ("[T]here is no requirement that class certification must be 'necessary.'" (citations omitted)).

Further, even if the court found that Rule 23(b)(2) had a needs requirement, the facts of this case support a finding of need.  First, class certification is needed because it will allow the jury to more accurately assess whether alterations or modifications will pose an "undue financial hardship or administrative burden" for Defendants.  *See* 28 C.F.R. § 35.150(a)(3); 24 C.F.R.

§ 8.24(a)(2).  Only by examining the extent of harms incurred by Plaintiffs collectively can a jury make the balancing determination necessary in deciding whether a burden is "undue."  *See Pierce v. County of Orange*, 526 F.3d 1190, 1217-18 (9th Cir. 2008) (considering the harms suffered by the plaintiff class as a whole in assessing the burden imposed by the requested accommodations).

Second, class certification is needed because it will prevent Plaintiffs' claims from becoming moot in the event that named Plaintiffs die or move residencies.  *See Sonsna v. Iowa*, 419 U.S. 393, 398-402 (1975) (noting that if the claims of named plaintiffs become moot, an appellate court might still find that the claims of unnamed class members present live controversies).  Given the health problems suffered by Plaintiffs, the risk of mootness is not inconsequential -- one of the named Plaintiffs, Gene Strickland, already passed away since the filing of Plaintiffs' Complaint.  *See* Realty Laua Opp'n 2.

In sum, the court finds that certification under Rule 23(b)(2) is appropriate.

## V.  <u>CONCLUSION</u>

For the reasons discussed above, the court GRANTS Plaintiffs' Motion for Class Certification.  As a result of this Order, the class will be defined as all present and future residents of KPT and Kuhio Homes who are eligible for

30

public housing, who have mobility impairments or other disabling medical conditions that constitute "disabilities" or "handicaps" under federal disability nondiscrimination laws, and who are being denied access to the facilities, programs, services, and/or activities of the Defendants, and or/discriminated against, because of the architectural barriers and/or hazardous conditions described in the Complaint.

The court ORDERS that the parties meet and confer within 10 calendar days of the filing of this Order to agree on the proposed notice to potential class members pursuant to Federal Rule of Civil Procedure 23(d)(2). The notice shall be submitted to the court within 20 calendar days of the filing of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 29, 2009.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*McMillon et al. v. State of Hawaii et al.*, Civ. No. 08-00578 JMS/LEK, Order Granting Plaintiffs Hazel McMillon, Gene Strickland, Trudy Sabalboro, Katherine Vaiola and Lee Sommers' Motion for Class Certification