IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAZEL MCMILLON, ET AL., | ) | CIVIL NO. 08-00578 LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAI`I, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND GRANTING PLAINTIFFS'
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

On January 19, 2011, Plaintiffs Hazel McMillon,
Gene Strickland, Trudy Sabalboro, Katherine Vaiola, and
Lee Sommers, individually ("Named Plaintiffs"), and on behalf of
a class of present and future residents of Kuhio Park Terrace and
Kuhio Homes who have disabilities affected by architectural
barriers and hazardous conditions (all collectively "Plaintiffs"
or the "Class") filed a Motion for an Award of Attorneys' Fees
and Costs ("Motion"). Defendants/Cross Defendants/
Crossclaimants/Third-Party Plaintiffs/Counterclaim Defendants the
State of Hawai`i and Hawai`i Public Housing Authority ("HPHA",
both collectively "State Defendants") filed a statement of no
opposition to the Motion on January 26, 2011, and Third-Party
Defendant/Counterclaimant Urban Management Corporation, doing
business as Urban Real Estate Company ("Urban") filed a statement
of no position on January 25, 2011.

On February 1, 2011, this matter came before the Court for a final fairness hearing for the proposed class action settlement[1] and a hearing on Plaintiffs' Motion. M. Victor Geminiani, Esq., appeared on behalf of Plaintiffs; John Cregor, Jr., Esq., and John Wong, Esq., appeared on behalf of the State Defendants; Kelvin Kaneshiro, Esq., appeared on behalf of Defendant/Cross Claimant/Cross Defendant Realty Laua LLC ("Realty Laua"); and Michael Tom, Esq., appeared on behalf of Urban. On February 11, 2011, Plaintiffs filed their Submission of Amended Declaration and Revised Exhibit in support of the Motion ("2/11/11 Submission"). For the reasons set forth below, and after due consideration of the evidence and arguments presented by the parties and the record in this case, the Court concludes that good cause exists to grant final approval of the settlement agreement in this action pursuant to Federal Rules of Civil Procedure Rule 23(e) and to grant Plaintiffs' Motion.

## BACKGROUND

Plaintiffs filed their class action complaint on December 18, 2008 seeking damages, declaratory and injunctive relief, and attorneys' fees against the State Defendants and Realty Laua for violations of Title II and Title V of the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of

---

[1] This Court previously filed its Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement on December 16, 2010. [Dkt. no. 259.]

the Rehabilitation Act of 1973 ("Section 504"), and the Fair

Housing Amendments Act of 1988 ("FHA"). The claims arise from

discriminatory obstacles, hazardous conditions, and the failure

to grant reasonable accommodations, for residents with

disabilities in Kuhio Park Terrace ("KPT") and Kuhio Homes.

Plaintiffs moved for class certification on June 3,

2009, [dkt. no. 72,] and United States District Judge J. Michael

Seabright granted Plaintiffs' motion on October 29, 2009,[2]

certifying a class consisting of:

> all present and future residents of KPT and Kuhio
> Homes who are eligible for public housing, who
> have mobility impairments or other disabling
> medical conditions that constitute "disabilities"
> or "handicaps" under federal disability
> nondiscrimination laws, and who are being denied
> access to the facilities, programs, services,
> and/or activities of the Defendants, and
> or/discriminated against, because of the
> architectural barriers and/or hazardous conditions
> described in the Complaint.

[Order Granting Pltfs.' Motion for Class Certification, filed

10/29/09 (dkt. no. 120), at 30-31.]

Throughout the course of this action, this Court

presided over numerous settlement discussions between the

parties, and the parties also engaged in mediation before Keith

Hunter. As a result of these discussions, which demonstrate good

faith and arms-length negotiations, Plaintiffs and the State

---

[2] On October 29, 2010, the parties consented to proceed
before a United States Magistrate Judge, and the case was
reassigned to this Court as the presiding judge.

Defendants agreed on a settlement as set forth below.

## PROPOSED SETTLEMENT

Plaintiffs and the State Defendants agreed to a settlement by which the State Defendants will: implement and comply with improved policies and forms for KPT and Kuhio Homes residents to request reasonable accommodations and to request transfers to accessible units; implement deadlines for responses to such requests; make certain improvements and modifications to the premises and grounds of KPT and Kuhio Homes to improve accessibility for persons with disabilities; contract with an experienced, nationally-recognized organization to monitor compliance, review policies and procedures, perform a site assessment, and provide training to the State Defendants' employees and contractors; pay a total of $610,000 to Plaintiffs; and assign all claims against Realty Laua and Urban relating to the class actions to the Named Plaintiffs to prosecute on behalf of the Class. [Mem. in Supp. of Pltfs.' Motion for Prelim. Approval of Class Action Settlement, filed 11/5/10 (dkt. no. 249-1), at 4-5.]

The $610,000 payment will be disbursed as follows: $45,000 to the Named Plaintiffs; $200,000 to begin a fund for distribution among the Class Members; and $365,000 in attorneys' fees and costs. [Id. at 5.]

In exchange, Plaintiffs shall release and dismiss all

4

claims against the State Defendants alleged in this action and in the related action in the state circuit court.  [Id.]

The settlement agreement is subject to: 1) the 2009 Hawai`i Legislature's appropriation of the settlement funds; 2) court approval; and 3) the United States Department of Housing and Urban Development's ("HUD") approval.  Plaintiffs represented that the Legislature has appropriated the funds.  [Id. at 2.]

## PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE OF THE SETTLEMENT TO THE CLASS

This Court granted preliminary approval of the settlement, finding that it was "fair, reasonable, and adequate" as required by Fed. R. Civ. P. Rule 23(e), and scheduled a final fairness hearing for January 31, 2011.  [Order Granting Pltfs.' Motion for Prelim. Approval of Class Action Settlement, filed 12/16/10 (dkt. no. 259), at 4.]  The Court also directed Plaintiffs' counsel to provide notice of the settlement to the Class.

On January 14, 2011, this Court continued the final fairness hearing from January 31, 2011 to February 1, 2011.  [EO (dkt. no. 263).]

On January 31, 2011, the State Defendants filed a declaration stating that, by December 29, 2010, HPHA staff posted notices regarding the settlement at all of the occupied units in KPT and Kuhio Homes and in the common areas.  HPHA and Plaintiffs' counsel also made arrangements to translate the

5

notice for Micronesian residents and Samoan residents, if necessary. [State Defs.' Decl. of Phyllis M. Ono in Supp. of Their Statement of No Opp. to Pltfs.' Motion for Settlement, filed 1/31/11 (dkt. no. 270), at ¶¶ 4-6.]

At the February 1, 2011 final fairness hearing, Plaintiffs' counsel represented that the State Defendants placed notices around the KPT and Kuhio Homes complexes regarding the change in the hearing date. In addition, Plaintiffs' counsel waited at the courtroom at the original hearing date and time and no Class Member appeared. He also represented that counsel received between twelve to fourteen calls from various Class Members after the State Defendants posted the notice of the settlement. None of the callers expressed any objections to the settlement.

The Court therefore finds that, as required by Federal Rules of Civil Procedure Rule 23(e)(1), notice of the settlement was directed in a reasonable manner to all Class Members who would be bound by the settlement.

## MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

Insofar as the settling parties have allocated a portion of settlement funds for Plaintiffs' attorneys' fees and costs, this Court must examine the reasonableness of the award before it can grant final approval of the settlement. See Fed. R. Civ. P. 23(h) ("In a certified class action, the court may

award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

## I.   __Entitlement to Attorneys' Fees and Costs__

The settlement agreement between Plaintiffs and the State Defendants provide for an award of Plaintiffs' attorneys' fees and costs.  Further, the settlement resolves, *inter alia*, Plaintiffs' ADA claims, and the ADA provides that a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs[.]"  42 U.S.C. § 12205.  Under the ADA, in order for a court to find that a party is the prevailing party for purposes of an award of attorneys' fees, the party "must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned."  Jankey v. Poop Deck, 537 F.3d 1122, 1129-30 (9th Cir. 2008) (citation and quotation marks omitted).  These requirements are satisfied in the instant case, and Plaintiffs are the prevailing party for purposes of an award of attorneys' fees and costs under the ADA.  The Court FINDS that Plaintiffs are entitled to an award of attorneys' fees and costs in this case.

## II.   __Amount of the Award__

Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See

<u>Fischer v. SJB-P.D., Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000).

The court must determine a reasonable fee by multiplying "the

number of hours reasonably expended on the litigation" by "a

reasonable hourly rate." <u>Hensley</u>, 461 U.S. at 433. Second, the

court must decide whether to adjust the lodestar amount based on

an evaluation of the factors articulated in <u>Kerr v. Screen Extras

Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), which have not been

subsumed in the lodestar calculation. <u>See</u> <u>Fischer</u>, 214 F.3d at

1119 (citation omitted).

> The factors the Ninth Circuit articulated in <u>Kerr</u> are:
>
> (1) the time and labor required, (2) the novelty
> and difficulty of the questions involved, (3) the
> skill requisite to perform the legal service
> properly, (4) the preclusion of other employment
> by the attorney due to acceptance of the case, (5)
> the customary fee, (6) whether the fee is fixed or
> contingent, (7) time limitations imposed by the
> client or the circumstances, (8) the amount
> involved and the results obtained, (9) the
> experience, reputation, and ability of the
> attorneys, (10) the "undesirability" of the case,
> (11) the nature and length of the professional
> relationship with the client, and (12) awards in
> similar cases.

<u>Kerr</u>, 526 F.2d at 70. Factors one through five have been

subsumed in the lodestar calculation. <u>See</u> <u>Morales v. City of San

Rafael</u>, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the Ninth

Circuit, extending <u>City of Burlington v. Dague</u>, 505 U.S. 557, 567

(1992), held that the sixth factor, whether the fee is fixed or

contingent, may not be considered in the lodestar calculation.

<u>See</u> <u>Davis v. City & County of San Francisco</u>, 976 F.2d 1536, 1549

8

(9th Cir. 1992), <u>vacated in part on other grounds</u>, 984 F.2d 345
(9th Cir. 1993).  Once calculated, the "lodestar" is
presumptively reasonable.  <u>See</u> <u>Pennsylvania v. Del. Valley
Citizens' Council for Clean Air</u>, 483 U.S. 711, 728 (1987); <u>see
also</u> <u>Fischer</u>, 214 F.3d at 1119 n.4 (stating that the lodestar
figure should only be adjusted in rare and exceptional cases).

Although Plaintiffs do not request a lodestar award of
attorneys' fees in this case, this Court uses the fees that it
could have awarded the Plaintiffs under the lodestar analysis as
a gauge of the reasonableness of the attorneys' fees provided for
in the settlement agreement.  <u>See, e.g.</u>, <u>Almodova v. City &
County of Honolulu</u>, CV 07-00378 DAE-LEK, 2010 WL 1372298, at *7
(D. Hawai`i March 31, 2010) (stating that Court will use the
lodestar analysis as a guide to evaluate the reasonableness of
all agreed upon attorneys' fees in a settlement of the Fair Labor
Standards Act action).[3]

If Plaintiffs' counsel calculated their attorneys' fees
according to the lodestar analysis, the fees would be as follows
for counsel from Alston Hunt Floyd & Ing ("AHFI"):

| AHFI Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Paul Alston | $350 | 38.70 | $ 13,545.00 |
| Jason Kim | $240 | 611.90 | $146,856.00 |

---

[3] The citation is to this Court's Findings and
Recommendation to Grant Plaintiffs' Motion for Approval of
Settlement and Attorney's Fees for Individual Plaintiffs.  The
district judge adopted the findings and recommendation on April
20, 2010.  2010 WL 1644971 (D. Hawai`i Apr. 20, 2010).

| | | | |
|---|---|---|---|
| Maren Calvert | $210 | 6.30 | $ 1,323.00 |
| TMA | $100 | 3.40 | $ 340.00 |
| BMK | $100 | 2.40 | $ 240.00 |
| DDD | $100 | 17.40 | $ 1,740.00 |
| TFM | $100 | 23.20 | $ 2,320.00 |
| Kelly Guadagno - paralegal | $ 70 | 150.20 | $ 10,514.00 |
| Gail Pang - doc. analyst | $ 50 | 5.50 | $ 275.00 |
| Jya-Ming Bunch - doc. analyst | $ 50 | 21.90 | $ 1,095.00 |
| Samson Lee - doc. analyst | $ 50 | 53.90 | $ 2,695.00 |
| SLM | $ 50 | 3.90 | $ 195.00 |
| | | Subtotal | $181,138.00 |
| | 4.712% State Excise Tax | | $ 8,535.22 |
| | | **Total** | **$189,673.00** |

[Motion, Decl. of Jason H. Kim ("Kim Decl.") at ¶¶ 5-7, Exh. 1.]

Mr. Alston, Mr. Kim, and Ms. Calvert have forty, twelve, and ten years of litigation experience, respectively. [Kim Decl. at ¶¶ 5-6.] Mr. Kim states that the initials "refer to various law clerks who were temporarily employed by" AHFI.[4] [Id. at ¶ 7.]

Plaintiffs' counsel from the Lawyers for Equal Justice ("LEJ") recorded the following hours in this case:

| LEJ Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| M. Victor Geminiani | $285 | 374.30 | $106,675.50 |
| Elizabeth Dunne | $225 | 668.80 | $150,480.00 |
| William Durham | $225 | 86.10 | $ 19,372.50 |
| Jennifer Albertson | $125 | 30.65 | $ 3,831.25 |
| Erica Jeung Dickey | $125 | 102.70 | $ 12,837.50 |
| Delia L'Heureux | $125 | 174.40 | $ 21,800.00 |
| Deja Marie Ostrowski | $ 75 | 12.45 | $ 933.75 |
| | | Subtotal | $315,930.50 |
| | | State Excise Tax | $ 12,637.22 |
| | | **Total** | **$328,567.72** |

[2/11/11 Submission, Amended Decl. of M. Victor Geminiani ("Amended Geminiani Decl.") at ¶ 6.] Mr. Geminiani has been

---

[4] The Court notes that, based on the hourly rates, SLM appears to be a document analyst.

practicing law since 1969 and specializes in poverty law with an emphasis in federal litigation. Ms. Dunne was first admitted to practice law in 2001, and was admitted to the Hawai`i bar in 2009. Mr. Durham was admitted to the Hawai`i bar in 2004. Both Ms. Albertson and Ms. Dickey were first admitted to practice law in 2007, but Ms. Dickey is not licensed to practice law in Hawai`i. Ms. L'Heureux was admitted to the Hawai`i bar in 2008. Ms. Ostrowski is a recent law school graduate who is not licensed to practice law in Hawai`i. LEJ argues that Ms. Dickey's, Ms. L'Heureux's and Ms. Ostrowski's rates are comparable to paralegals in the community. [Id. at ¶ 5.]

Plaintiffs' counsel from the Legal Aid Society - Employment Law Center ("LAS-ELC") recorded the following hours in this case:

| LAS-ELC Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Claudia Center | $285 | 213.57 | $ 60,867.45 |
| Jinny Kim | $240 | 345.74 | $ 82,977.60 |
| Mary Broughton | $ 70 | 17.90 | $ 1,253.00 |
| | | **Total** | **$145,098.05** |

[Motion, Decl. of Claudia Center ("Center Decl."), Exh. 5; Kim Decl. at ¶ 9.[5]] Ms. Center graduated from law school in 1992, and Ms. Kim graduated in 1999. Both have extensive experience in civil litigation and in disability discrimination cases in

---

[5] Exhibit 5 reflects time incurred by Patricia Shiu and Sam Goldberg, but Plaintiffs did not include their time in the calculation of the estimated lodestar fee that LAS-ELC arguably would have been entitled to.

particular.  Ms. Broughton is a paralegal with over twenty years of experience in civil litigation.  [Center Decl. at ¶ 5.]

A.  **Reasonable Hourly Rate**

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees.  See <u>Webb v. Ada County</u>, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See <u>id.</u>; see also <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992), <u>as amended on denial of reh'g</u>, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").

In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable.  See <u>Jordan v. Multnomah County</u>, 815 F.2d 1258, 1263 (9th Cir. 1987).  Mr. Kim states AHFI's hourly rates and LAS-ELC's hourly rates are based upon the hourly rates that this Court awarded AHFI in its Order Granting in Part and Denying in Part Plaintiffs' Motion for Award of Attorneys' Fees and Costs in <u>Blake, et al. v. Nishimura, et al.</u>, CV 08-00281 LEK, 2010 WL 1372420 (D. Hawai`i March 31, 2010).  [Kim Decl. at ¶ 4.]  In <u>Blake</u>, the Court also addressed reasonable hourly rates for Mr. Geminiani, Mr. Durham, and Ms. L'Heureux.  2010 WL 1372420, at *9.

### 1.  **Alston Hunt Floyd & Ing**

The hourly rates in the instant case for Mr. Alston, Mr. Kim, Ms. Guadagno, Ms. Bunch, and Mr. Lee are the same as, or lower than, the rates that this Court awarded them in Blake.  The Court also awarded the law clerks in Blake $100 per hour, the same rate cited for the law clerks in the instant case.  Id.  The Court therefore FINDS that the cited rates for Mr. Alston, Mr. Kim, Ms. Guadagno, Ms. Bunch, Mr. Lee, Ms. Pang, TMA, BMK, DD, TFM, and SLM are manifestly reasonable.

Ms. Calvert was not one of the attorneys in Blake. Mr. Kim states that she has been practicing law for approximately ten years.  [Kim Decl. at ¶ 6.]  The Court compares Ms. Calvert's hourly rate to Mr. Kim's because they performed similar work and they have comparable experience.  The Court FINDS that Ms. Calvert's rate is manifestly reasonable.

### 2.  **Lawyers for Equal Justice**

The hourly rate in the instant case for Mr. Geminiani is the same as the rate that this Court awarded him in Blake. The cited rate in the instant case for Ms. Ostrowski is comparable to the rate that this Court awarded for Ms. Guadagno in Blake.  2010 WL 1372420, at *9.  The Court therefore FINDS that the cited rates for Mr. Geminiani and Ms. Ostrowski are manifestly reasonable.

In Blake, this Court awarded Mr. Durham $150 per hour

and awarded Ms. L'Heureux $100 per hour. <u>Id.</u> This Court
therefore finds that their hourly rates in the instant case of
$225 and $125, respectively, are excessive. This Court FINDS
that a reasonable hourly rate for Mr. Durham is $150 and a
reasonable hourly rate for Ms. L'Heureux is $100.

In <u>Sound, et al. v. Koller, et al.</u>, another comparable
case to the instant case, the magistrate judge awarded Ms. Dunne
an hourly rate of $185 and awarded Ms. Albertson and Ms. Dickey
hourly rates of $125 each. CV 09-00409 JMS-KSC, 2010 WL 1992198,
at *9 (D. Hawai`i March 5, 2010).[6] This Court therefore FINDS
Ms. Albertson's and Ms. Dickey's hourly rates in the instant case
to be manifestly reasonable. The Court finds Ms. Dunne's current
rate of $225 per hour to be excessive, and FINDS that $185 is a
reasonable hourly rate for her.

### 3.    <u>Legal Aid Society - Employment Law Center</u>

Mr. Kim calculated LAS-ELC's approximate lodestar fees
by using the hourly rates that this Court granted in <u>Blake</u>. He
used the same rate that this Court awarded Mr. Geminiani for Ms.
Center, the same rate that this Court awarded him for Ms. Kim,
and the same rate that this Court granted Ms. Guadagno for
Ms. Broughton. [Kim Decl. at ¶ 9.] Ms. Center graduated from

---

[6] The citation is to the Report of Special Master
Recommending that Plaintiffs' Motion for Attorneys' Fees & Non-
taxable Expenses Be Granted in Part and Denied in Part. The
district judge adopted the report on May 19, 2010. 2010 WL
1992194.

law school in 1992, and Ms. Kim graduated in 1999. [Center Decl. at ¶ 5.]

Although Ms. Center has far less experience than Mr. Geminiani, the Court FINDS that her hourly rate is manifestly reasonable for an attorney of her experience, skill, and reputation. Similarly, the Court also FINDS that the hourly rates for Ms. Kim and Ms. Broughton are manifestly reasonable.

### B.    **Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, a party seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained. See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted). A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. See id. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987)). A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).

There are a number of tasks that this Court would exclude as non-compensable under the lodestar analysis. For example, this Court would exclude: time that counsel spent traveling from their offices to meetings or court appearances; duplicative billings for multiple Plaintiffs' counsel attending the same meeting; and clerical items, such as maintaining office case files. The Court will exclude ten percent of all the claimed hours to account for these non-compensable tasks. The Court finds that the remainder of the hours would be compensable under the lodestar analysis.

## C.  Total Lodestar Award

Thus, if the Court were to award a lodestar fee to Plaintiffs' counsel in the instant case, the fee for all work that counsel has done thus far would be:

| AHFI Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Paul Alston | $350 | 34.83 | $ 12,190.50 |
| Jason Kim | $240 | 550.71 | $132,170.40 |
| Maren Calvert | $210 | 5.67 | $  1,190.70 |
| TMA | $100 | 3.06 | $    306.00 |
| BMK | $100 | 2.16 | $    216.00 |
| DDD | $100 | 15.66 | $  1,566.00 |
| TFM | $100 | 20.88 | $  2,088.00 |
| Kelly Guadagno – paralegal | $ 70 | 135.18 | $ 10,138.50 |
| Gail Pang – doc. analyst | $ 50 | 4.95 | $    247.50 |
| Jya-Ming Bunch – doc. analyst | $ 50 | 19.71 | $    985.50 |
| Samson Lee – doc. analyst | $ 50 | 48.51 | $  2,425.50 |
| SLM | $ 50 | 3.51 | $    175.50 |
|  |  | Subtotal | $163,700.10 |
|  | 4.712% State Excise Tax | | $  7,713.55 |
|  |  | **Total** | **$171,413.65** |

| LEJ Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| M. Victor Geminiani | $285 | 336.87 | $ 96,007.95 |
| Elizabeth Dunne | $185 | 601.92 | $111,355.20 |

| | | | |
|---|---|---|---|
| William Durham | $150 | 77.49 | $ 11,623.50 |
| Jennifer Albertson | $125 | 27.585 | $  3,448.13 |
| Erica Jeung Dickey | $125 | 92.43 | $ 11,553.75 |
| Delia L'Heureux | $100 | 156.96 | $ 15,696.00 |
| Deja Marie Ostrowski | $ 75 | 11.205 | $    840.38 |
| | | Subtotal | $250,524.91 |
| | | State Excise Tax | $ 11,804.73 |
| | | **Total** | **$262,329.64** |

| LAS-ELC Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Claudia Center | $285 | 192.213 | $ 54,780.71 |
| Jinny Kim | $240 | 311.166 | $ 74,679.84 |
| Mary Broughton | $ 70 | 16.11 | $  1,127.70 |
| | | **Total** | **$130,588.25** |

Plaintiffs argue that, even if the lodestar award were reduced by one-third to account for work done on the remaining claims against Realty Laua, it is clear the settlement allocation of $365,000 for attorneys' fees and costs is reasonable. [Mem. in Supp. of Motion at 7-8.] Thus, the total lodestar fees of $564,301.54 would be reduced to $376,201.03 to account for work on the claims that are not part of the settlement.

**III. Costs**

AHFI has incurred $34,400.24 in costs in costs to date in this matter, including state excise tax on taxable items. [Kim Decl., Exh. 2.] LEJ has incurred $7,363.94 in costs. [Motion, Decl. of M. Victor Geminiani, Exh. 4.] LAS-ELC has incurred $3,893.38 in costs. [Center Decl., Exh. 6.] The costs include, *inter alia*, attorney travel expenses, research costs, a video of KPT, mediation fees, service fees, consulting fees, publication fees, copying costs, postage, and telephone charges. The vast majority of Plaintiffs' costs are compensable. The

17

Court would exclude some minor expenses, such as filing fees that are attributable solely to the related state court action. [Kim Decl., Exh. 2 at 1.]

Based on the Court's review of the amount that this Court would have awarded Plaintiffs under the lodestar analysis, this Court FINDS that the proposed allocation of $365,000.00 of the settlement fund for an award of Plaintiffs' attorneys' fees is reasonable. Plaintiffs' Motion is therefore GRANTED.

## FINAL APPROVAL OF SETTLEMENT

Rule 23(e) states, in pertinent part:

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

. . . .

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

"The purpose of Rule 23(e) is to protect the unnamed members of

18

the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

The Court must examine the settlement as a whole for overall fairness. The Court must approve or reject the settlement in its entirety; it cannot alter certain provisions. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). The Court must balance the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. (citations omitted).

The Court has already evaluated the proposed settlement and found it to be fair, reasonable, and adequate pursuant to Rule 23(e). [Order Granting Pltfs.' Motion for Prelim. Approval of Class Action Settlement, filed 12/16/10 (dkt. no. 259), at 4.] The Court reaffirms that finding here.

Despite being duly notified of the settlement, no Class Member has filed objections to the settlement. Furthermore, no Class Member appeared at the final fairness hearing to object to the settlement. Finally, Plaintiffs' counsel represented to the Court that no Class Member has contacted class counsel to object

19

to, or otherwise express any reservations about, the settlement. The Court therefore FINDS that no Class Member objects to this settlement, and this is further support for the Court's conclusion that the settlement is fair, reasonable, and adequate.

Finally, the Court notes that, at the final fairness hearing, counsel for the State Defendants represented that the regional HUD office has approved the settlement and has recommended that the national office approve the settlement as well. The Court therefore FINDS that the State Defendants have satisfied the conditions that the settling parties placed on the agreement.

## CONCLUSION

In light of the foregoing, the Court ORDERS as follows:

1.     The Court FINDS that the requirements of Federal Rules of Civil Procedure Rule 23(e) have been satisfied and that the settlement agreement is fair, reasonable, and adequate.

2.     The Court therefore GRANTS final approval of the settlement, and ORDERS the State Defendants to: fund the settlement fund; distribute settlement proceeds; and otherwise perform their duties under the settlement agreement within thirty (30) days after the national HUD office grants final approval of the settlement, or within thirty (30) days after the filing of this Order, whichever is later.

3.     As of the effective date of the settlement, the

released claims of each Class Member who has not opted out, pursuant to the terms of the settlement agreement, are and shall be deemed to be fully, finally, and conclusively resolved as against the State Defendants.

    4.   Within thirty (30) days after the funding of the settlement fund, Plaintiffs' counsel shall file with the Court a report showing the distribution of the settlement fund.

    5.   Upon receipt of such report and approval by the Court and the settling parties, this Court will dismiss Plaintiffs' claims against the State Defendants with prejudice.

    IT IS SO ORDERED.

    DATED AT HONOLULU, HAWAII, February 22, 2011.



    /S/ Leslie E. Kobayashi
    Leslie E. Kobayashi
    United States District Judge

**HAZEL MCMILLON, ET AL. V. STATE OF HAWAII, ET AL; CIVIL NO. 08-00578 LEK; ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**